UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

William McDermott,

Plaintiff,

vs. REPORT AND RECOMMENDATION

Internal Revenue Service, Kansas City, MO; Mr. Ladd Ellis, or current director, Internal Revenue Service, Kansas City, MO; the United States; Minnesota Department of Revenue; State of Minnesota; County of Beltrami, MN; Social Security Administration, Office of Central Operations, Baltimore, MD,

Defendants. Civ. No. 00-378 (MJD/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 2nd day of February, 2001.

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant State of Minnesota, and the Minnesota Department of Revenue (collectively, "State Defendants"), for Summary Judgment, see, Rule 56, Federal Rules of Civil Procedure, and upon the Plaintiff's Motion for a Court Order that would lift any tax liens from his real estate, and that would shelter his financial

FEB 02 2001
CLERK

56

resources from any attachment by the State. A Hearing on the Motions was conducted on January 25, 2001, at which time, the Plaintiff appeared pro se, and the State Defendants appeared by Linda F. Close, Assistant Minnesota Attorney General.

For reasons which follow, we recommend that the State Defendants' Motion for Summary Judgment be granted, and that the Plaintiff's Motion for a Court Order be denied.

## II. Factual and Procedural Background

The Plaintiff is a pro se litigant who seeks a refund of $441.00, which was paid as State Income Tax, as well as compensatory and punitive damages in the amount of $100,000.[1] As noted, the Plaintiff also asks that we enjoin the State Defendants from any tax collection activities. In his Complaint, the Plaintiff alleges constitutional violations in the assessment and collection of State Income Taxes, and he generally alleges constitutional violations as to the very existence of such income taxes. The Plaintiff bases jurisdiction for his claim on Title 42 U.S.C.

---

[1]The Plaintiff also appears to seek $25 million dollars from the County of Beltrami, and the State of Minnesota, alleging that they are seizing his property without due process of law. From the Plaintiff's pleadings, it appears that this complaint arises from a lien placed on his property for failure to pay a property tax. See, Motion to Amend Complaint, at 3. At the time of the Hearing, the State advised that this claim only relates to Beltrami County, as property taxes in this State are administered by the respective counties.

§1983; Title 18 U.S.C. §§241 and 242; and Articles I and V of the United States Constitution.[2]

Beginning in early 1996, the Plaintiff began to make known to the State Defendants his objection to paying State Income Taxes. In March of 1996, the Plaintiff filed an affidavit with the Department of Revenue ("Department") entitled "Affidavit of Claims for Exemption and Exclusion from Gross Income of Renumeration, Wages and Withholding." See, Complaint at 2. In April of 1996, the Plaintiff filed his 1995 Minnesota Individual Income Tax Return. On that return, he sought a refund of the entire tax withheld by his employer. See, Martinson Affidavit, at ¶¶1, 2.

On May 10, 1996, a Department auditor sent the Plaintiff a letter acknowledging receipt of his Affidavit of March of 1996, and rejecting his argument, as stated in that Affidavit, which protested the State's right to impose an income tax. See, Gazdick Affidavit, at ¶2. In September of 1996, the Department issued the Plaintiff a refund of his excess withholding, but retained suffi-

---

[2]The Plaintiff cannot base jurisdiction on Title 18 U.S.C. §§241 and 242 as they are criminal statutes, and neither of them confers a private right of action. See, United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998)("Courts repeatedly have held that there is no private right of action under §241, even though the statute allows federal authorities to pursue criminal charges."), citing Cox v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§241-242," as "[t]hese statutes do not give rise to a civil action for damages.").

cient withholding -- $441.00 -- to pay the tax due for 1995. See, Exhibit B to Martinson Affidavit. The Plaintiff protested this action in a letter that the Department received on September 20, 1996. See, Martinson Affidavit, at ¶5. The Department responded to the Plaintiff's letter of protest by issuing a Notice of Adjustment dated November 21, 1996, which affirmed the Department's position that the Plaintiff was entitled only to the excess of withholding, and not the entire amount withheld by his employer. See, Exhibit C to Martinson Affidavit.

On January 15, 1998, the Internal Revenue Service ("IRS") notified the Department that it had adjusted the Plaintiff's 1995 Federal Income Tax. See, Exhibit A to Estrellado Affidavit. In December of 1998, the Department issued a Minnesota Income Tax Audit Report, which adopted the Federal changes, and which adjusted the Plaintiff's Minnesota Income Tax accordingly. See, Exhibit B to Estrellado Affidavit. The Plaintiff protested the adjustment in a letter dated December 7, 1998. The basis for the protest was the Petitioner's assertion that the income tax is voluntary, and that he no longer wished to pay that tax. See, Exhibit C to Estrellado Affidavit. On January 15, 1999, the Department auditor wrote the Plaintiff a letter rejecting his argument, and making clear that the Plaintiff was expected to pay the Minnesota Income Tax. See, Makousky Affidavit, at ¶2. The auditor allowed the Plaintiff

additional time to dispute the audit report of December 2, 1998. Id. at ¶3. When the Plaintiff did not respond, the Department, on March 22, 1999, issued a Notice and Determination on Administrative Appeal, which affirmed the results of the December of 1998 audit report. See, Exhibit D to Makousky Affidavit. Although the Plaintiff was entitled to appeal that Notice to the Minnesota Tax Court, and was advised of that right, he did not do so. See, Makousky Affidavit, at ¶¶5, 7.

After the Notice had been sent, and the appeal time had expired, the auditor referred the matter to the Collections Division of the Department. Id. at ¶8. On January 31, 2000, a Revenue Collections Officer notified the Plaintiff that a tax lien would be filed against his property. See, Jones Affidavit, at ¶2. By letter dated February 18, 2000, the Department demanded payment of the unpaid tax liability, and notified the Plaintiff of its intent to levy his wages. Id. at ¶3. The Plaintiff protested this action by a letter dated February 24, 2000, in which he alleged that his land was federally patented, and that the Department had no authority or jurisdiction to file a lien or seize his property. Id. at ¶4.

On March 1, 2000, the Plaintiff protested the action in a telephone call to the Department. The lien, however, had already been filed by that time. Id. In response to the Plaintiff's let-

ter of February 24, 2000, the Revenue Collection Officer wrote a letter informing the Plaintiff of the amount he would have to pay to release the tax lien. See, Exhibit C to Jones Affidavit. The Department also attempted to place a levy on the Plaintiff's wages, as permitted by law, see, Minnesota Statutes Section 270.70, but the effort was unsuccessful because the wage levy was sent, in March of 2000, to a company at which the Plaintiff had not been employed since November of 1999. See, Jones Affidavit, at ¶¶6, 7, 8. Subsequently, the Plaintiff filed this action, seeking monetary damages, and equitable relief so as to prevent the Department's collection efforts.

## III. Discussion

### A. The State Defendants' Motion for Summary Judgment.

1. Standard of Review. Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Krentz v. Robertson, 228 F.3d

897, 901 (8th Cir. 2000); Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000); Carter v. St. Louis Univ., 167 F.3d 398, 400 (8th Cir. 1999). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Herring v. Canada Life Assurance, 207 F.3d 1026 (8th Cir. 2000); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir. 1997).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999); Jauregui v. Carter Manufacturing Co., 173 F.3d 1076, 1085 (8th Cir. 1999). Moreover, the movant is entitled to Summary Judgment where the non-moving party has failed "to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000); Greer v. Schoop, 141 F.3d 824, 826 (8th Cir. 1998). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995); McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 510 (8th Cir. 1995); Settle v. Ross, 992 F.3d 162, 163 (8th Cir. 1993).

2. Legal Analysis. The underlying basis, for the Plaintiff's claim that the Minnesota Income Tax, and any related efforts to collect that tax, are unconstitutional, is that the income tax assessment is based upon the Federal Income Tax which, in the Plaintiff's view, is also unconstitutional. Recently, we recommended that the Plaintiff's attack on the constitutionality of the Federal Income Tax should be dismissed for lack of subject matter jurisdiction -- although we did point out, for the Plaintiff's benefit -- the abundant Supreme Court, and Eighth Circuit authority, which have consistently rejected the Plaintiff's uncon-

stitutionality argument. See, McDermott v. IRS, et al., Civ. No. 00-378, Report and Recommendation, dated January 19, 2001.

With respect to the Plaintiff's attack on the Minnesota Income Tax, we start with the recognition that a State unquestionably has the power to tax individuals domiciled in that State. See, Lawrence v. State Tax Commissioner, 286 U.S. 276, 279-80 (1932). As the Lawrence Court explained:

> The obligation of one domiciled within a state to pay taxes there, arises from the unilateral action of the state government in the exercise of the most plenary of sovereign powers, that to raise revenue to defray the expenses of government and to distribute its burdens equably among those who enjoy its benefits. Hence, domicile in itself establishes a basis for taxation. Enjoyment of the privileges of residence within the state, and the attendant right to invoke the protection of its laws, are inseparable from the responsibility for sharing the costs of government. See, Fidelity & Columbia Trust Co. v. Louisville, 245 U. S. 54, 58, 38 S. Ct. 40, 62 L. Ed. 145, L. R. A. 1918C, 124; Maguire v. Trefry, 253 U. S. 12, 14, 17, 40 S. Ct. 417, 64 L. Ed. 739; Kirtland v. Hotchkiss, 100 U. S. 491, 498, 25 L. Ed. 558; Shaffer v. Carter, 252 U. S. 37, 50, 40 S. Ct. 221, 64 L. Ed. 445. The Federal Constitution imposes on the states no particular modes of taxation, and apart from the specific grant to the federal government of the exclusive power to levy certain limited classes of taxes and to regulate interstate and foreign commerce, it leaves the states unrestricted in their power to tax those domiciled within them, so long as the tax imposed is upon property within the state or on privileges enjoyed there, and is not so palpably arbitrary or un-

> reasonable as to infringe the Fourteenth Amendment. Kirtland v. Hotchkiss, supra.

Id. at 279-80.

In exercising this power to tax, Minnesota has chosen to impose an income tax on those individuals who are domiciled within the State. The tax, which dates back to 1933, has been held to be constitutional notwithstanding a number of different challenges. See, Reed v. Bjornson, 253 N.W. 102 (Minn. 1934)(equal protection clause challenge); Great Lakes Pipe Line Co. v. Commissioner of Taxation, 138 N.W.2d 612 (Minn. 1965), appeal dism'd, 384 U.S. 718 (1966) (income related to company's Minnesota business may be taxed by Minnesota); Minnesota v. Northwest Airlines, 7 N.W.2d 691 (Minn. 1942), aff'd, 322 U.S. 292 (1944)(operation of tax that restricts or even destroys business does not violate due process for that reason alone). Notably, the Plaintiff does not offer any authority to question the constitutionality of the Minnesota Income Tax, or the authority of Minnesota to tax domiciliaries, nor does he contend that the tax is arbitrary, or that it is a double tax. Nor, not surprisingly, have we found any such authority.

Rather, the crux of the Plaintiff's argument is that the Federal Income Tax is unconstitutional and, consequently, a Minnesota tax assessment, which is based on the Federal Income Tax, must also

be unconstitutional.[3] However, as we have advised the Plaintiff on several occasions, the Federal Income Tax is indisputably constitutional. In fact, our Court of Appeals has consistently upheld the tax, despite the same types of challenges that the Plaintiff here has raised, frequently calling such challenges "frivolous." See, e.g., United States v. Gerads, 999 F.2d 1255, 1256 (8th Cir. 1994)(the Federal Income Tax is not a voluntary tax); Funk v. Commissioner, 687 F.2d 264, 265 (8th Cir. 1992) (wages are income and thus subject to taxation); Newman v. Schiff, 778 F.2d 460, 467 (8th Cir. 1985); Hansen v. United States, 744 F.2d 658, 660 (8th Cir. 1984); Lively v. Commissioner, 705 F.2d 1017, 1018 (8th Cir. 1983) (the income tax is not an unconstitutional direct tax); Hayward v. Day, 619 F.2d 716, 717 (8th Cir. 1980); Broughton v. United States, 632 F.2d 706, 707 (8th Cir. 1980). Thus, given the constitutional status of the Federal Income Tax, the Plaintiff's derivative argument, that the Minnesota Income Tax is unconstitutional because it is based upon an unconstitutional Federal Income Tax, must and does fail.

Lastly, the Plaintiff contends that the State of Minnesota's collection efforts violate his right to due process of law. Again,

---

[3]The Minnesota Income Tax is imposed on the "taxable income" of residents. See, Minnesota Statutes Section 290.03. Taxable income is defined as "Federal taxable income." Id.; see also, Minnesota Statutes Section 209.01, Subdivisions 19, 22, and 29.

the Plaintiff's contention is that, because the income tax is unconstitutional, the State's collection efforts traverse the due process clause. However, for reasons already stated, this argument is without merit. We do note, however, that the State has here followed the statutory requisites in assessing the additional tax, and placing the lien on the Plaintiff's property.[4]

---

[4]Pursuant to Minnesota Statutes Section 289A.35, the Commissioner of Revenue is directed to examine returns and determine the correct tax. Therefore, when the Plaintiff filed his 1995 return, which requested a refund of all tax withheld, the Commissioner was empowered to make any corrections to the amount of tax due. The Plaintiff then protested that action. The Department disallowed the refund, and the Plaintiff was advised of his right to contest that action in the State Tax Court. See, Minnesota Statutes Section 289A.50, subdivision 7. Such a contest had to be filed within 60 days of the denial of the refund. Id. The Plaintiff also held the option of suing the State in a Minnesota District Court. Id. However, the Plaintiff did not advance his claim beyond the administrative level.

The Plaintiff was also assessed more tax for 1995 due to an increased assessment by the IRS. Once the IRS reported the assessment of additional income to the Plaintiff, Minnesota adjusted its assessment accordingly. See, Minnesota Statutes Section 289A.35. The Plaintiff appealed this determination administratively, but the appeal was denied. He was also afforded an opportunity to contest that denial of his administrative appeal to the Minnesota Tax Court, or to the Minnesota District Court, neither of which did he pursue.

Finally, after the Plaintiff failed to pay his taxes, a lien on his property was created by law. See, Minnesota Statutes Section 270.69, subdivision 1. By statute, the Plaintiff could have appealed to the Commissioner of Revenue, if he believed that the lien had been imposed in error. Moreover, if the Commissioner then failed to act, or did not release the lien, the Plaintiff had the option of appealing to the State Courts. See, Minnesota Statutes

(continued...)

Therefore, finding no merit to the Plaintiff's arguments as to the unconstitutionality of the Federal and State Income Taxes, we recommend that the Defendants' Motion for Summary Judgment be granted.[5]

B. <u>The Plaintiff's Motion for a Court Order</u>.

The Plaintiff has sought an Order from this Court which would direct James L. Jones, who served as the State Revenue Collections Officer with respect to the Plaintiff's case, and the Minnesota Department of Revenue, to remove the "illegal" lien from the Plaintiff's property, and to cease and desist in any further collection activity, pending final disposition of this case. In effect, the Plaintiff seeks a Preliminary Injunction.

Under the established law of this Circuit, in order for a Preliminary Injunction to be granted, the moving party must demonstrate: "(1) the threat of irreparable harm to [him]; (2) the state

---

[4](...continued) <u>Section 270.276</u>. Notwithstanding the availability of these avenues of relief, the Plaintiff waived his right to pursue them to a conclusion. Since we recommend a grant of Summary Judgment to the State Defendants on other grounds, we do not now consider the res judicata effect, if any, of the Plaintiff's waiver of his right to State Court relief.

[5]The Plaintiff also appears to contend that the imposition of of an income tax violates the Eighth Amendment's prohibition against Cruel and Unusual Punishment. However, the prohibitions of the Eighth Amendment apply only to criminal sanctions. See, <u>Ingraham v. Wright</u>, 430 U.S. 651, 664-71 (1977).

of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [he] will succeed on the merits; and (4) the public interest." Adam-Mellang v. Apartment Search, Inc., 1996 WL 523350 *2 (8th Cir., September 17, 1996), quoting Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981); Stuart Hall Co., Inc. v. Ampad Corp., 51 F.3d 780, 783 n. 2 (8th Cir. 1995), citing Calvin Klein Cosmetics Corp. v. Lenox Lab., supra at 503; LensCrafters v. Vision World, Inc., 931 F. Supp. 1462, 1465 (D. Minn. 1996).

However, since we are recommending that the State Defendants' Motion for Summary Judgment be granted, because the Plaintiff's claims are without merit, we conclude that none of the above factors counsel the granting of the equitable relief that the Plaintiff requests. Therefore, we recommend that the Plaintiff's Motion for such relief be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the State of Minnesota and the Minnesota Department of Revenue's Motion for Summary Judgment [Docket No. 44] be GRANTED.

2. That the Plaintiff's Motion for a Court Order [Docket No. 35] be DENIED.

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 20, 2001** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 20, 2001**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.